**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

JAMES CLAYTON SOLOMON                                                                                PLAINTIFF
REG. #03633-063

v.                                                      No. 5:10CV05163 LH

HUNTER PETRAY, Captain,
Benton County Detention Center, *et al*.                                                     DEFENDANTS

**OPINION AND ORDER**

  James Clayton Solomon brought this action against Deputy U.S. Marshals Susan Jones and Cory Thomas, among others, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), alleging violations of his rights to be from retaliation and from excessive force.  Jones and Thomas moved to dismiss or in the alternative for summary judgment, asserting qualified immunity.  This Court denied their motions, treating them as motions for summary judgment.  Jones and Thomas appealed to the Eighth Circuit, which remanded the case to this Court to consider in more detail Jones's and Thomas's qualified immunity defenses.  On remand, this Court has reconsidered the motions of Jones and Thomas in their entirety.  As will be explained, Jones's and Thomas's motions for summary judgment are granted in part and denied in part.

**I.**

  On January 7, 2008, U.S. District Judge Robert Dawson of the Fort Smith Division of the Western District of Arkansas convicted Solomon of violating the conditions of his supervised release and sentenced him to five years in prison.  *See United States v. Solomon*, No. 2:07CR20009 RTD (Jan. 7, 2008) (Document #29).  Judge Dawson allowed Solomon until April 2, 2008, to surrender at the Bureau of Prisons to serve his sentence.  *Id.*

On February 6, 2008, Solomon absconded. *See United States v. Solomon*, No. 2:08CR20029 JLH (Apr. 11, 2008) (Document #10). Before Solomon absconded, he wrote a letter in which he stated that he hopes U.S. District Judge Jimm Larry Hendren, who presides over the Fayetteville Division of the Western District of Arkansas, dies of a slow and painful disease. Document #6, at 3. Solomon mailed the letter to a newspaper, which published it, and he also mailed a copy to Judge Hendren. *Id.*

On April 10, 2008, Deputy U.S. Marshals in Los Angeles, California, arrested Solomon on the charge that he failed to surrender to the Bureau of Prisons on or before April 2, 2008. *See Solomon*, No. 2:08CR20029 JLH (Document #10). The U.S. Marshals Service transported Solomon by airplane from California to Oklahoma City, arriving at the Oklahoma City Federal Transfer Center on April 18, 2008. On April 25, 2008, Jones and a contract guard transported Solomon from the Oklahoma City Transfer Center to the U.S. Marshals Service office in Fort Smith, Arkansas. According to Solomon, during this transport they showed Solomon a copy of the letter Solomon wrote regarding Judge Hendren and told him that he would "pay for writing that type of letter to the judge." Document #6, at 6.

Also on April 25, Solomon was transferred from Fort Smith to the Benton County Criminal Detention Center. Jones and Thomas have provided a declaration from Mark Spellman, a Supervisory Deputy U.S. Marshal in the Western District of Arkansas who examined the U.S. Marshals Service's transportation records. Spellman states that Benton County Criminal Detention Center personnel transported Solomon from Fort Smith to the Benton County Criminal Detention Center on April 25, 2008. Document #56-1, at 3.[1]

---

[1] In his complaint and addendum to complaint, Solomon indicates he was transported to the Benton County Criminal Detention Center by the U.S. Marshals Service. In his responses to Jones's

Solomon alleges that on or around his third night at Benton County, Benton County officers entered his cell in the middle of the night, handcuffed him, slipped a dark cloth over his head, carried him out of his cell and into a separate room, and gave him a "blanket party." According to Solomon, "blanket party" is the term for an event in which assaulters wrap a victim in a blanket or cloth so he cannot identify his assaulters, and then they beat and abuse the victim. Solomon contends that during his blanket party, the Benton County officers (who also are defendants in this action) let him know that the Deputy Marshals asked the Benton County officers to give him a blanket party, and one Benton County officer said, "that's your welcome to Benton County from the U.S. Marshals." Document #6, at 6; *see* Document #1, at 7. According to Solomon, he suffered the following injuries from the blanket party: immediate contusions and lower back pain, pain in his kneecaps from being repeatedly picked up and dropped to the floor, and extreme anxiety and paranoia.

In his *pro se* complaint and addendum to complaint in this action, Solomon names Jones and Thomas as two Deputy Marshals who violated his due process rights and his right to be free from excessive force. Solomon alleges that the decision to place him in the Benton County Criminal Detention Center and the subsequent blanket party were done in retaliation for the letter he wrote regarding Judge Hendren. In his declaration accompanying Jones's and Thomas's motions to dismiss or in the alternative for summary judgment, Mark Spellman states that neither Jones nor

---

and Thomas's motions to dismiss or in the alternative for summary judgment, however, Solomon indicates he may have been mistaken about this. Jones and Thomas have moved to supplement the record to include a petition filed by Solomon in a separate proceeding. In that petition, Solomon stated that Benton County personnel transported him from Fort Smith to the Benton County Criminal Detention Center. The motion to supplement the record is granted. Document #103-1. In his addendum to complaint, Solomon asserts that the two U.S. Marshals who transported him to the Benton County Criminal Detention Center told him they would make sure he would get special treatment at the Benton County Criminal Detention Center and that he would get to see how tough he really was.

3

Thomas make any determinations as to where prisoners will be housed and that they did not make any determination as to where Solomon would be housed. In his responses to Jones's and Thomas's motions to dismiss or in the alternative for summary judgment, Solomon asserts that on or about the time defendants told Solomon he was going to "hell" for writing his letter to Judge Hendren and would pay for it, Thomas physically struck him with a blow to the lower body, causing Solomon's knees to buckle and causing Solomon to receive medical treatment for his injuries. Solomon does not state the precise time or location in which these statements and actions occurred.

For screening purposes only, this Court concluded that Solomon stated a cognizable claim that Jones and Thomas, among others, retaliated against him for writing the letter regarding Judge Hendren. This Court also concluded that Solomon stated two viable excessive force claims, one of which was for the blanket party Solomon alleges he received from the Benton County officers, which Solomon alleges was given at the Deputy Marshals' request. *See* Document #9.

In its order denying Jones's and Thomas's motions to dismiss or in the alternative for summary judgment, which this Court treated as motions for summary judgment, this Court explained that the addendum alleges that Jones and Thomas violated Solomon's right to be free from excessive force but does not specify in what manner they violated that right. *See* Document #73. That order did not discuss Solomon's retaliation claims. Additionally, the parties' briefs show confusion over which specific cognizable claims Solomon has asserted against Jones and Thomas.[2] The Court takes this opportunity to clarify.

Because the record conclusively demonstrates that Thomas and Jones did not decide that Solomon would be detained in the Benton County Criminal Detention Center and did not transport

---

[2] This confusion also arises in part as a result of new information contained in Solomon's response briefs to Jones's and Thomas's motions.

4

him there, summary judgment is entered in their favor on Solomon's claim that they assigned him to that facility in retaliation for writing the letter concerning Judge Hendren and his claim that they made threats while transporting him to Benton County. Solomon also has not stated a cognizable claim that Jones and Thomas violated his constitutional rights by verbal or psychological abuse, so that claim is dismissed.

Dismissing those claims does not, however, dispose of all of Solomon's retaliation and excessive force claims against Jones and Thomas. Solomon is in essence claiming that Jones and Thomas retaliated against Solomon for writing the letter regarding Judge Hendren by asking Benton County officers to beat and abuse Solomon and that Thomas physically abused him. Construing Solomon's *pro se* complaint liberally, these allegations can be viewed as distinct claims: (1) claims against Jones and Thomas that they retaliated against Solomon for writing the letter; (2) a claim against Jones that she conspired to commit excessive force on Solomon; and (3) a claim that Thomas committed excessive force on Solomon.

With the specific claims delineated, the Court will consider Jones's and Thomas's assertions of qualified immunity for each claim. For reasons explained in this Court's previous order regarding Jones's and Thomas's motions to dismiss or in the alternative for summary judgment, *see* Document #73, the Court treats these motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct.

2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

### III.

A government official sued in his individual capacity may invoke qualified immunity. *Sisney v. Reisch*, 674 F.3d 839, 844 (8th Cir. 2012). Qualified immunity "is an affirmative defense for which the defendant carries the burden of proof." *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) (quoting *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)). Yet the Supreme Court also has characterized qualified immunity as "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)). As such, qualified immunity balances the need to hold public officials accountable with

the need to shield those officials from harassment, distraction, and liability when they act reasonably, which is why "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* (internal quotation marks omitted). A two-step inquiry determines whether a government official is entitled to qualified immunity: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right[] and (2) [whether] the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (quoting *Parish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012) (quoting *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012)). Courts may address either step first. *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

A clearly established right is a right sufficiently clear "that every reasonable official would [understand] that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations marks omitted). The right allegedly violated must be defined in a particularized manner, as opposed to a broad generalization, so that a reasonable official understands the right's contours. *Id.* at 2094. At the same time, however, the right is not defined in such a particularized manner that it is clearly established only if the same action has previously been held unlawful. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). The salient question "is whether the state of the law at the time gave the officials 'fair warning' their conduct was unlawful." *Sisney*, 674 F.3d at 845. In answering this question,

the Eighth Circuit has "taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry." *Bearden v. Lemon*, 475 F.3d 926, 929 (8th Cir. 2007).

### A.     Solomon's Retaliation Claims Against Jones and Thomas

Solomon claims that Jones and Thomas retaliated against him for a letter that he wrote to Judge Jimm Larry Hendren and mailed to a newspaper, which published the letter. To prevail on a retaliation claim, a plaintiff must show that (1) he engaged in protected speech or expression, (2) he suffered an adverse action, and (3) the adverse action was causally related to the protected speech or expression. *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010).

At step one of the qualified immunity analysis, the facts, viewed in the light most favorable to Solomon, demonstrate that Jones and Thomas deprived Solomon of his right to be free from retaliation for engaging in protected speech. First, Solomon engaged in protected speech. He wrote a letter about a public figure – a federal judge – that was published in a newspaper. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964) ("[W]e consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."). Jones and Thomas make no argument to the contrary. The facts in the record as it presently stands give no indication that the letter's contents would fall outside the purview of protected speech, as the mere wish that a person die from a slow and painful disease does not constitute a true threat, *see Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622-23 (8th Cir. 2002) (explaining that the Eighth Circuit's test for determining wether speech constitutes a true threat focuses on whether a reasonable recipient of the speech "would interpret the purported threat as a serious expression of an intent to

cause a present or future harm"), and no evidence exists that the letter was an incitement to immediate lawless action, *see Buffkins v. City of Omaha, Douglas Cnty., Neb.*, 922 F.2d 465, 472 (8th Cir. 1990) (explaining the narrow reach of the "fighting words" doctrine, which does not protect speech that inflicts injury or tends to incite an immediate breach of the peace).

Second, Solomon suffered adverse actions. According to Solomon, the Benton County Criminal Detention Center officers gave him a "blanket party" by throwing a blanket or cloth over his head so he could not identify his assaulters and then beating and abusing him at the request of the Deputy Marshals. Document #6, at 6. Solomon also asserts that Thomas "struck an unprovoked blow" at Solomon. *Id.* at 4. Solomon specifically names Jones and Thomas as the Deputy Marshals who took actions to ensure that Solomon suffered. *Id.* These actions – striking an unprovoked blow and requesting that Solomon receive more beatings and abuse – if true, would chill a person of ordinary firmness from continuing to write letters critical of public figures. *See Revels v. Vincent*, 382 F.3d 870, 876 (8th Cir. 2004).

Third, evidence exists that the adverse actions were causally related to the letter Solomon wrote to Judge Hendren. Solomon states that during his transfer from Oklahoma City to Fort Smith, Deputy Marshals told him that he would "pay for writing that type of letter to the judge." *Id.* "They told me I should never have written that letter to the judge and they were going to make sure I was punished for that letter." *Id.* Jones transferred Solomon from Oklahoma City to Fort Smith on April 25, 2008. Document #56-1, at 3. According to Solomon, unnamed defendants told Solomon that he was going to "hell" in retaliation for his letter regarding Judge Hendren and that Solomon would "pay for writing that type of letter to the judge." Document #68, at 2. Solomon alleges that on or around this time Thomas struck Solomon with a blow to the lower body. *Id.* Then, Solomon

9

alleges, during the blanket party he received from the Benton County Criminal Detention Center guards, Solomon was told that the blanket party was his "welcome to Benton County from the U.S. Marshals." *Id.* From these facts one reasonably could infer that Solomon was assaulted by the Benton County Criminal Detention Center officers at the Deputy Marshals' request and that the Deputy Marshals made such a request because of the letter Solomon wrote to Judge Hendren. A genuine issue of material fact also exists regarding whether Thomas struck Solomon because Solomon wrote the letter to Judge Hendren.

Jones and Thomas correctly argue that Mark Spellman's declaration demonstrates that they did not transfer Solomon from Fort Smith to the Benton County Criminal Detention Center and that they were not involved in the decision to send Solomon to the Benton County Criminal Detention Center. Therefore, they argue, even if someone deprived Solomon of his right to be free from retaliation, the facts show that they were not the individuals responsible for such deprivation. Solomon's retaliation claims against Jones and Thomas, however, do not depend upon a finding that Jones and Thomas transferred him from Fort Smith to Benton County or that they made the decision to send him to Benton County. Solomon alleges that a Deputy Marshal stated during the trip from Oklahoma City to Fort Smith, which Jones traveled, that he would be punished for writing the letter about Judge Hendren. Solomon asserts that the defendants told Solomon he would pay for writing the letter regarding Judge Hendren and that Thomas physically struck him but does not state that these events occurred while he was being transferred from Fort Smith to Benton County. Jones and Thomas present no evidence that they were not the Deputy Marshals who asked the Benton County Criminal Detention Center officers to give Solomon a blanket party.[3] In other words, Solomon's

---

[3] One reasonably could infer from the Benton County Criminal Detention Center guard's statement that the blanket party was Solomon's "welcome to Benton County from the U.S.

complaint and addendum to complaint do not limit the time frame for the retaliation claim's basis solely to the transfer between Fort Smith and Benton County on April 25, 2008. Therefore, Spellman's statement that Jones and Thomas did not transfer Solomon from Fort Smith to Benton County on April 25, 2008, does not demonstrate that Jones and Thomas could not have deprived Solomon of his right to be free from retaliation for exercising his free speech rights.

At the second step of the qualified immunity analysis, Solomon had a clearly established right to be free from retaliation for writing a letter criticizing a public figure. Even though Jones and Thomas make no argument that the law was not clearly established at the time of the alleged deprivation, this Court will address the issue because it is part of the two-step qualified immunity inquiry. Some difficulty in addressing the issue arises as a result of conflicting precedent and complex issues regarding which party has the burden of demonstrating whether the law was clearly established.[4] The Eighth Circuit has stated in one line of cases that the defendant bears the burden

---

Marshals" that Deputy Marshals asked or told Benton County Criminal Detention Center guards to give Solomon a blanket party.

[4] Demonstrating whether the law was clearly established seemingly would include both a burden of production and a burden of persuasion. *See* Teressa E. Ravenell, *Hammering in Screws: Why the Court Should Look Beyond Summary Judgment When Resolving § 1983 Qualified Immunity Disputes*, 52 Vill. L. Rev. 135, 182 (2007). Allocating a burden may not be necessary when determining whether the law was clearly established is purely a question of law. *See Elder v. Holloway*, 510 U.S. 510, 516, 114 S. Ct. 1019, 1023, 127 L. Ed. 2d 344 (1994); *see generally* Ravenell, *supra*, at 173-75 (examining the consequences in qualified immunity disputes of deviating from the general rule that proof follows pleading by placing the burden of proof on the plaintiff). This determination, however, often is a matter of applying the law to specific facts, because a court can determine if a right was clearly established only as that right relates to a specific set of facts, i.e., those facts in the record. *See* Alan K. Chen, *The Burdens of Qualified Immunity: Summary Judgment and the Role of Facts in Constitutional Tort Law*, 47 Am. U. L. Rev. 1, 7, 91-94 (1997) ("Courts can assess whether a particular act violates a 'clearly established' right only by comparing the existing case law to an undisputed description of that act."); Alan K. Chen, *The Facts About Qualified Immunity*, 55 Emory L.J. 229, 230-31, 237-48, 262-64, 273-74 (2006); Ravenell, *supra*, at 150-53 (2007). In the retaliation claim in this action, for instance, for Jones and Thomas to have had fair warning that their alleged retaliatory actions violated the law, the letter's contents must have

11

of proving that the law was not clearly established at the time of the alleged violation, *see, e.g.*, *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007); *Burnham v. Ianni*, 119 F.3d 668, 674 (8th Cir. 1997) (en banc); *Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1490 (8th Cir. 1987), and in a second line of cases that while qualified immunity is an affirmative defense for which the defendant carries the burden of proof, the plaintiff must demonstrate that the law is clearly established, *see, e.g.*, *Harrington*, 678 F.3d at 679; *Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011); *Sparr*, 306 F.3d at 593; *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). The second line of cases seems the more correct interpretation of Supreme Court precedent, as it is based on the Court's pronouncement that "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197, 104 S. Ct. 3012, 3020-21, 82 L. Ed. 2d 139 (1984).[5]

In this action, even if Solomon has the burden of demonstrating that the law was clearly established at the time of the deprivation, he has met it. "It is well-settled that 'as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of his constitutionally protected speech.'" *Osborne v. Grussing*, 477 F.3d

---

been such that a reasonable officer would have understood the letter would be constitutionally protected speech. *See Nelson*, 603 F.3d at 449.

[5] The argument to the contrary is based partly on the proposition that the moving party on a summary judgment motion bears the burden of establishing the relevant predicate facts, even when the moving party asserts qualified immunity. *See Winslow v. Smith*, 696 F.3d 716, 730 (8th Cir. 2012) ("The party asserting immunity always has the burden of establishing the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." (quoting *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008))); *see also Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924, 64 L. Ed. 2d 572 (1980) (holding that qualified immunity is an affirmative defense and stating "[w]e see no basis for imposing on the plaintiff an obligation to anticipate such a defense.").

1002, 1005 (8th Cir. 2007) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L. Ed. 2d 441 (2006)); *see Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986) (holding that a prison guard violated an inmate's rights under the Eighth and Fourteenth Amendments when he threatened an inmate with a gun in retaliation for a prisoner's attempting to exercise his due process and First Amendment rights). Jones and Thomas had fair warning that causing adverse actions to Solomon because he wrote a letter criticizing Judge Hendren would be a constitutional violation, so the law was clearly established, which means that they are not entitled to qualified immunity.

**B.      Solomon's Conspiracy Claim Against Jones**

Solomon's claim that Jones violated his right to be free from excessive force is in essence a claim that Jones conspired with others to deprive Solomon of this right, as Solomon never asserts that Jones personally committed excessive force. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) ("A document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotations marks omitted) (citation omitted)). To prove a *Bivens* conspiracy claim against a particular defendant, a plaintiff must show (1) an express or implied agreement to deprive the plaintiff of his constitutional rights and (2) an actual deprivation of those rights resulting from that agreement. *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991); *see Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (discussing § 1983 conspiracy claims). A plaintiff does not need to show an express agreement between conspirators and can demonstrate conspiracy through a sequence of events from which a reasonable jury could infer a meeting of the minds, but conclusory allegations that the defendants conspired are insufficient. *See Guthrie v. Franklin Cnty., Mo.*, 4:07CV2108 CEJ, 2009 WL 1310154 (E.D. Mo. May 11, 2009)

(citing *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993)). A pretrial detainee has a constitutional right to be free from excessive force that is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). Under this analysis, excessive force is force that is objectively unreasonable; injuries detainees suffer must be necessarily incident to administrative interests in safety, security, and efficiency. *See Johnson-El v. Schoemehl*, 878 F.2d at 1048.

At step one of the qualified immunity inquiry, the facts, viewed in the light most favorable to Solomon, demonstrate that Jones conspired to deprive Solomon of his right to be free from excessive force. Solomon states that the Deputy Marshals who transported him from Oklahoma City to Fort Smith told him that he would pay for writing the letter to Judge Hendren. Document #6, at 4. Jones was one of the Deputy Marshals who transported Solomon from Oklahoma City to Fort Smith. Document #56-1, at 3. Solomon also states in his addendum to complaint that Jones violated his right to be free from excessive force. Document #6, at 6. Solomon further states in his complaint and addendum that the Benton County Criminal Detention Center officers told him that persons from the U.S. Marshals Service had asked the Benton County officers to give Solomon a blanket party – i.e., to physically abuse him. Document #1, at 7; Document #6, at 6. From these facts, it can reasonably be inferred that Jones participated in asking the Benton County guards to use excessive force on Solomon, which would constitute an agreement to deprive Solomon of his constitutional right to be free from excessive force.

The facts viewed in the light most favorable to Solomon also demonstrate the deprivation of Solomon's right to be free from excessive force. Solomon states that Benton County Criminal Detention Center officers went into his cell in the middle of the night, handcuffed him, slipped a

dark cloth over his head, and carried him out of his cell into another room. Then they physically beat him and repeatedly picked him up and dropped him on the concrete floor. *See* Document #1, at 7; Document #6, at 6-7.[6] According to Solomon, he suffered contusions, lower back pain, and pain in his kneecaps from being dropped on the floor, as well as psychological damage from anxiety and paranoia. Document #6, at 6-7. These allegations, if true, indicate that the force used was objectively unreasonable and Solomon's injuries were not incident to administrative interests in safety, security, and efficiency.

At the second step of the qualified immunity inquiry, the law is clearly established that government officials cannot conspire to deprive a person of his constitutional rights. *See, e.g., Simpson v. Weeks*, 570 F.2d 240, 242-43 (8th Cir. 1978). In a more particularized manner, the law is clearly established that pretrial detainees have a right to be free from excessive force that is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments and that the facts Solomon alleges – unprovoked beatings and abuse by Benton County Criminal Detention Center guards – would be objectively unreasonable under the Due Process Clauses. *See Williams-El v. Johnson*, 872 F.2d 224, 229 (8th Cir. 1989) ("This proposition[, that it is unconstitutional for a correctional officer to beat a prisoner unnecessarily,] has long been clearly established . . . ."); *see also Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992) (stating, under the even higher Eight Amendment excessive-force standard, "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident." (citation omitted)). For these reasons, Jones had fair warning that her alleged conduct violated clearly established law.

---

[6] When this "blanket party" allegedly occurred, Solomon was a pretrial detainee. *See* Document #9, at 8 n.12.

### C.   Solomon's Excessive Force Claim Against Thomas

Solomon also brings an excessive force claim against Thomas. Solomon alleges that Thomas struck an unprovoked blow to Solomon's lower body, causing Solomon's knees to buckle and necessitating medical treatment for his injuries. Document #68, at 2. Solomon did not make this allegation until his brief in response to Thomas's motion to dismiss or in the alternative for summary judgment. *See id.* The Court takes judicial notice that, when appealing this Court's denial of summary judgment to the Eighth Circuit, Thomas acknowledged that Solomon's excessive force claim against him "is not subject to dismissal at this time." Reply Brief of Appellants at 9, *Solomon v. Petray*, 699 F.3d 1034 (8th Cir. 2012) (No. 11-3486); *see Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996) ("[W]e believe that the district court should have considered the new allegations contained in the response to the motion to substitute and dismiss."). Therefore, because Thomas acknowledges that Solomon's excessive force claim against him is not subject to dismissal, the Court need not undertake the two-step qualified immunity issue for this claim.

### D.   Verbal Abuse

Solomon's complaint can also be construed to allege that Jones and Thomas abused him verbally and psychologically, apart from the allegations of retaliation, conspiracy, and excessive force. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). The Eighth Circuit has recognized an exception to the rule when a prison guard using a gun threatens to kill a prisoner. *Id.* (citing *Burton*, 791 F.2d at 97); *see also Irving v. Dormire*, 519 F.3d 441, 448-49 (8th Cir. 2008). In *Hopson*, as here, the officer in question never brandished a lethal weapon. Therefore, to the extent that Solomon alleges a claim for verbal or psychological abuse, apart from excessive force and

16

conspiracy, that claim is dismissed. *See also Thurman v. Kilgore*, No. 1:11CV01041, 2012 WL 3732945, at *2 (W.D. Ark. Aug. 8, 2012); *Harrington v. Rush*, No. 1:09CV00009, 2009 WL 1616010, at *3 (E.D. Ark. June 9, 2009).

## CONCLUSION

Jones and Thomas's motion to supplement the record is GRANTED. Document #103-1. The motions for summary judgment filed by Jones and Thomas are GRANTED IN PART and DENIED IN PART. Documents #53 and #56. Because the record conclusively demonstrates that Jones and Thomas did not decide that Solomon would be detained in the Benton County Detention Center, summary judgment is entered in their favor on Solomon's claim that they assigned him to that facility in retaliation for exercise of his rights under the First Amendment. Likewise, because the record conclusively demonstrates that Jones and Thomas did not transport Solomon to the Benton County Criminal Detention Center, any allegations against them for statements made while he was being transported to the Benton County Criminal Detention Center must be dismissed. Similarly, Solomon's claims that he was subjected to verbal or psychological abuse must be dismissed.

Solomon, however, also alleges that Thomas physically struck him on one occasion. There is a genuine issue of material fact as to that claim. Likewise, there is a genuine issue of material fact on the issues of whether Jones and Thomas retaliated against Solomon for the exercise of his First Amendment rights and whether Jones conspired to deprive Solomon of his Fifth and Fourteenth Amendment right to be free from excessive force. Therefore, the Court denies Jones's and Thomas's motions for summary judgment on these claims.

While Solomon ultimately may fail to prove that the "blanket party" occurred, at this stage the Court must assume that it did occur. Jones and Thomas do not argue to the contrary. Nor do Thomas and Jones argue that such a "blanket party," and the actions Solomon alleges they took to ensure the "blanket party" occurred, would not violate Solomon's clearly established constitutional rights. Instead, they argue merely that they did not participate in that conduct. That argument is not based on either of the two steps of the qualified immunity analysis. For the reasons stated, genuine disputes of material fact exist as to whether Jones and Thomas deprived Solomon of his clearly established constitutional rights. Accordingly, Jones's and Thomas's qualified immunity defenses fail for the retaliation, conspiracy, and excessive force claims discussed above.

The stay of this action is hereby lifted. A new scheduling order will be entered separately.

IT IS SO ORDERED this 18th day of January, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE